Filed 9/30/16  P. v. Salas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C079324 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03953) |
| v. | |
| JUAN SALAS, | |
| Defendant and Appellant. | |

A jury convicted defendant Juan Salas of possessing methamphetamine for sale (Health & Saf. Code, § 11378), and the court found true the allegation that he had a prior conviction for the same offense (Health & Saf. Code, § 11370.2, subd. (a)).  Sentenced to a split sentence of six years, including four years in custody and two years in mandatory supervision, defendant contends (1) there was insufficient evidence of constructive possession and (2) the suspended parole revocation restitution fine imposed under Penal Code section 1202.45 must be stricken because defendant's sentence does not include a period of parole.  The Attorney General concedes the fine was improper.  We shall modify the judgment to strike the fine and affirm as modified.

1

*The Present Offense*

Around 8:55 a.m. on June 6, 2012, law enforcement officers went to a duplex on Judah Street in Sacramento to conduct a search. The parties stipulated that the search was lawful and that the duplex was the home of defendant and codefendant Patricia Caviness.

After giving knock-notice at the front door for over two minutes without a response, the officers forced entry. They found Caviness standing in the hallway, halfway out of the bathroom. In a bedroom, they found a man and a woman asleep, along with a backpack and a purse.[1] When the officers entered the master bedroom, they found defendant standing on the other side of the door.

Inside the bathroom, California Highway Patrol Officer Mario Galvez, the officer designated to maintain and document evidence at the scene, found a wet Tupperware container that appeared to have just been rinsed out. On the toilet seat rim and "toward the floor and bottom of the" toilet, Officer Galvez saw a powder that proved to be methamphetamine; it amounted to 0.72 gram. Based on the time it took the officers to gain entry, Caviness's location when found, and the Tupperware container and methamphetamine in the bathroom, Galvez believed Caviness had flushed some amount of methamphetamine down the toilet.

On a coffee table in the living room, the officers found a Tupperware container holding two plastic bags containing a white crystal-like substance that later tested positive for methamphetamine; the larger bag weighed 25.3 grams, and the smaller bag weighed 2.02 grams. Also on the coffee table was a container holding two pipes for smoking methamphetamine. Nearby was a digital scale coated with a white residue.

---

[1] The officers found the man's and woman's personal property in the bedroom but did not find methamphetamine, pipes, or paraphernalia there.

A purse found hanging on the living room wall contained credit cards and identification in Caviness's name and $636 in cash. There was a video surveillance monitor in the living room and a security camera at the front of the duplex.

In the master bedroom, the officers found a methamphetamine smoking pipe on a shelf in a closet. They also found written materials on methamphetamine manufacturing in that bedroom and elsewhere in the duplex. They did not find methamphetamine or cash in the bedroom.

An expert on the possession of methamphetamine for sale testified that the average dose of methamphetamine taken by a typical user is one-tenth to one-quarter of a gram, and it would be rare for any user to take as much as one gram a day. Based on the quantity of methamphetamine found in the duplex, the presence of a digital scale, the presence of a security camera, and the amount of cash found in Caviness's purse, the expert opined that the methamphetamine was possessed for sale.

The only witness called by the defense was Angela Caviness, the codefendant's sister, who testified that the codefendant sometimes worked for Angela's cleaning service and was paid in cash.

***The Prior Conviction***

Defendant and the prosecutor stipulated that on March 11, 2010, defendant pleaded no contest to possession of methamphetamine for sale. A police officer testified that on August 4, 2009, he and his partner responded to an address on Nighthawk Way in Sacramento, where they found Caviness exiting the garage and defendant inside it. On searching the garage, the officers found two bags of methamphetamine containing 43 grams and 1.8 grams respectively, a surveillance monitor linked to a security camera at the front of the residence, a digital scale, and a spoon holding a crystalline substance; another scale was found inside the residence.

3

The trial court instructed the jury it could consider this evidence in determining whether defendant knew the substance in the duplex was methamphetamine and whether he acted with the intent to sell.

## DISCUSSION

## I

Defendant contends there was insufficient evidence of constructive possession, the only theory of possession offered by the People. Therefore, according to defendant, his conviction must be reversed. We are not persuaded.

To prove possession of methamphetamine for sale, the prosecution had to show that defendant possessed a controlled substance, knew of its presence, knew that it was a controlled substance, intended to sell it at the time of possession, and possessed a usable amount. (Health & Saf. Code, § 11378; CALCRIM No. 2302.)

Possession may be actual or constructive. (*People v. Rogers* (1971) 5 Cal.3d 129, 134.) Constructive possession of contraband does not require actual possession but does require that a person knowingly maintains control over the contraband or the right to control it; such possession may be established by circumstantial evidence, including the reasonable inferences to be drawn from such evidence. (*People v. Williams* (1971) 5 Cal.3d 211, 215; *People v. Barnes* (1997) 57 Cal.App.4th 552, 555.) Where the contraband is found in a place that is immediately and exclusively accessible to the defendant and subject to his dominion and control, or to his joint dominion and control with another, possession may be imputed to the defendant. (*Williams,* at p. 215.) If the place is one over which the defendant has general dominion and control, such as his residence, the inference of dominion and control over the contraband is easily made. (*People v. Jenkins* (1979) 91 Cal.App.3d 579, 584.)

We review claims of insufficient evidence under the substantial evidence standard, construing the evidence, including the reasonable inferences from the evidence, most favorably to the judgment. If, applying this standard, we find sufficient substantial

4

evidence—that is, evidence which is reasonable, credible, and of solid value—to support the judgment, we may not reverse merely because another finding from the evidence was possible. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578; *People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Here, it was stipulated that the contraband was found in defendant and codefendant's residence, a place where they shared dominion and control. Large quantities of methamphetamine—far more than a mere user would have on hand—were found in more than one room of the residence, along with other indicia of possession for both sale and use. The contraband was or had been stored in closed containers that could be presumed to belong to the permanent residents, defendant and codefendant. No evidence linked the contraband or the containers to the other persons found on the premises, who were not residents. Finally, the jury could consider defendant's prior conviction for possessing methamphetamine for sale: although offered to prove knowledge and intent, those elements did not come into play until the jury had already determined that defendant possessed the contraband, and the fact that he had possessed such contraband for sale before under essentially identical circumstances created a powerful inference that he constructively possessed the contraband for sale on this occasion. Viewing the totality of the evidence in the light most favorable to the judgment, it was sufficient to prove defendant's constructive possession of the contraband.

Defendant breaks down the evidence into two parts: the stipulation as to his residence and the remaining evidence. He then asserts that each part of the evidence, standing alone, was legally insufficient to prove constructive possession. But the jury was required to determine whether the evidence, considered as a whole, was sufficient. Therefore, defendant's argument is misguided.

Defendant relies on several cases that he deems "instructive" or otherwise supportive of his argument. (*People v. Harrington* (1970) 2 Cal.3d 991; *Armstrong v.*

5

*Superior Court* (1990) 217 Cal.App.3d 535; *People v. Johnson* (1984) 158 Cal.App.3d 850; *People v. Glass* (1975) 44 Cal.App.3d 772; *People v. Stanford* (1959) 176 Cal.App.2d 388; *People v. Bagley* (1955) 133 Cal.App.2d 481.) So far as defendant relies on the facts of these cases, his reliance is unavailing because the sufficiency of the evidence in a case necessarily turns on the unique facts of that case. Therefore, we decline to go through the exercise of distinguishing defendant's cases on their facts.

The rest of defendant's argument consists simply of bald assertions that the evidence was lacking on some points he considers essential to proving constructive possession. At most, such assertions show that the jury could conceivably have reached a different verdict. That possibility does not justify reversing the verdict the jury actually reached. (*People v. Johnson, supra*, 26 Cal.3d at pp. 576-578; *People v. Redmond, supra*, 71 Cal.2d at p. 755.)

## II

Defendant contends the $10,000 suspended restitution fine imposed by the trial court, to take effect if parole is revoked (Pen. Code, § 1202.45), must be stricken because his sentence does not include a period of parole. The Attorney General agrees. We agree with the parties.

At sentencing, the trial court imposed a $10,000 restitution fine under Penal Code section 1202.4, subdivision (b) and a "second $10,000 restitution fine that will be stayed during the tenure of [defendant's] mandatory supervision." Both the original and the corrected abstract of judgment show this fine as a parole revocation fine under Penal Code section 1202.45.

Under the Criminal Justice Realignment Act of 2011, the offense of which defendant was convicted (Health & Saf. Code, § 11378) was no longer subject to a state prison term and therefore did not have a period of parole. (Pen. Code, § 1170, subd. (h)(6).) Defendant committed the present offense on June 6, 2012. At that time, Penal Code section 1202.45 did not provide for a parole revocation restitution fine for

6

prisoners subject to community supervision on release from custody, and to impose such a fine would violate ex post facto principles. (*People v. Isaac* (2014) 224 Cal.App.4th 143, 147.)

Effective January 1, 2013, the Legislature amended Penal Code section 1202.45 to provide for a suspended restitution fine in conjunction with a period of mandatory supervision. (§ 1202.45, subd. (b); Stats. 2012, ch. 762, § 1 (Sen. Bill 1210).) However, this provision is not retroactive. (*People v. Isaac, supra,* 224 Cal.App.4th at pp. 146-148.) Therefore, even though the statute now provides for such a fine, it may not be imposed on defendant under these circumstances.

We order the "parole revocation" restitution fine stricken. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887.)

## DISPOSITION

The fine imposed under Penal Code section 1202.45 is stricken. As modified, the judgment is affirmed.

                                                                  RAYE          , P. J.

We concur:

          BLEASE          , J.

          HOCH          , J.